GRAVES, Justice,
Dissenting.
¶ 12. The majority of this Court chooses to ignore the blatant misrepresentations [11] by a prosecutor in order to wrongfully remove an African-American from the jury. Because I would find that the trial court erred in failing to grant Anthony Terrell Booker’s motion for new trial, I respectfully dissent.
¶ 13. On December 30, 2002, Booker, Shawn Davis, Mary Scarbough, and Desmond Shields were involved in the beating death of Dorian Johnson. Booker, Davis, Scarbough, and Shields were arrested on January 6, 2003, and charged with Johnson’s death. After a severance, Booker was tried on May 17, 2004. During voir dire, prosecutors moved to strike juror Chauncey Thompson, Juror 14, an African-American, on the basis of prior convictions. The trial court denied Booker’s request for time to investigate the alleged prior convictions. Booker was convicted of capital murder on May 20, 2004, and sen *363 tenced to life imprisonment without the possibility of parole.
¶ 14. Thereafter, Booker filed a motion for new trial. At the hearing on the motion for new trial, Booker introduced an affidavit from the Pascagoula City Court Clerk that Thompson had no prior convictions and that she had provided that information to an investigator from the district attorney’s office prior to the trial. Those facts were uncontroverted. The trial court denied Booker’s motion for a new trial and Booker appealed. This Court assigned the case to the Court of Appeals, which affirmed Booker’s conviction. Booker filed a petition for writ of certiorari, asserting that prosecutors knowingly gave false information to the trial court as a purportedly race-neutral justification for striking Chauncey Thompson, Juror 14, an African-American, from Booker’s venire in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).
¶ 15. Under Batson, a defendant must establish a prima facie case of purposeful discrimination as follows:
To establish such a case, the defendant first must show that he is a member of a cognizable racial group ... and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant’s race. Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits “those to discriminate who are of a mind to discriminate.” ... Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.
Batson, 476 U.S. at 96, 106 S.Ct. 1712 (citations omitted). Once the defendant has established a prima facie case of discrimination, the burden shifts to the State to provide a race-neutral reason for each strike. Id. at 97,106 S.Ct. 1712. The trial court then makes a determination of whether the defendant has established purposeful discrimination. Id. at 98, 106 S.Ct. 1712.
¶ 16. This Court has held that in reviewing a Batson claim, we will not overrule a circuit court unless the record indicates the decision was clearly erroneous or contrary to the overwhelming weight of the evidence. Flowers v. State, 947 So.2d 910, 917 (Miss.2007).
This Court has recognized five indicia of pretext that are relevant when analyzing the race-neutral reasons offered by the proponent of a peremptory strike, specifically:
(1) disparate treatment, that is, the presence of unchallenged jurors of the opposite race who share the characteristic given as the basis for the challenge; (2) the failure to voir dire as to the characteristic cited; ... (8) the characteristic cited is unrelated to the facts of the case; (4) lack of record support for the stated reason; and (5) group-based traits.

Id.

¶ 17. As this Court has found:
Because racially-motivated jury selection is still prevalent twenty years after Batson was handed down and because this case evinces an effort by the State to exclude African-Americans from jury service, we agree that it is “necessary to reconsider Batson’s test and the peremptory challenge system as a whole.” Miller-El, 125 S.Ct. at 2344 (Breyer, J., concurring). While the Batson test was developed to eradicate racially discriminatory practices in selecting a jury, prosecuting and defending attorneys *364 alike have manipulated Batson to a point that in many instances the voir dire process has devolved into “an exercise in finding race neutral reasons to justify racially motivated strikes.” Howell [v. State], 860 So.2d at 766 (Graves, J., dissenting). When Batson was handed down, Justice Marshall predicted that “[mjerely allowing defendants the opportunity to challenge the racially discriminatory use of peremptory challenges in individual cases will not end the illegitimate use of the peremptory challenge.” Batson, 476 U.S. at 106, 106 S.Ct. 1712 (Marshall, J., concurring). Unfortunately, as this case has shown, Justice Marshall was correct in predicting that this problem would not subside. His solution to this problem was to ban peremptory challenges outright, a position later advocated by Mississippi Supreme Court Justice Michael Sullivan. See Batson, 476 U.S. at 108, 106 S.Ct. 1712 (Marshall, J., concurring) (stating that “only by banning peremptories entirely can such discrimination be ended.”); Thorson v. State, 653 So.2d 876, 896 (Miss. 1994) (Sullivan, J., concurring) (stating that “the proper remedy for this type of situation is the complete elimination of peremptory challenges in the trial courts of Mississippi.”).
Flowers v. State, 947 So.2d 910, 937 (Miss. 2007).
¶ 18. I cannot ignore or condone a prosecutor’s blatant misrepresentation of facts to the trial court. The prosecutor in this case repeatedly represented to the court that he verified that juror Chauncey Thompson had multiple convictions. Those representations were false. He simply could not have “verified” a non-fact. There is an unrebutted affidavit from the municipal court clerk which clearly indicates that the prosecutor’s office was informed before the trial that juror Thompson had been charged but that those charges were dismissed because they were against the wrong person. Such a blatant, deliberate and repetitive misrepresentation by a prosecutor should not be condoned.
¶ 19. In offering a purportedly race-neutral reason for striking juror Thompson, the following exchange occurred:
BY MR. JONES [Prosecutor]: Judge, the first Batson challenge arises with Juror Number 14, Chauncey Thompson. The State’s race-neutral reason, Judge, is that, in checking the name of our jurors, we found that he has had a marijuana conviction, a driver’s license violation, an insurance violation, a seat belt violation in Pascagoula. He was convicted on 2/5/03. And on those bases, especially the marijuana conviction, Judge, we didn’t want a convicted marijuana holder on our jury.
BY MR. SHADDOCK (Counsel for Booker): Are you talking about a misdemeanor?
BY MR. LAWRENCE (Prosecutor): Misdemeanor.
BY THE COURT: A convicted marijuana holder?
BY MR. JONES: Or a user or ...
BY THE COURT: And that information was verified through what source?
BY MR. JONES: Through the Pas-cagoula City Court.
BY MR. SHADDOCK: We’d like a copy of it. Judge, he’s a 29-year-old black male that works at Sears, Roebuck and Company and has a college education, and they want to kick him off. He was born and raised in this county.
BY THE COURT: Well I find that the existence of that prior criminal history is sufficiently race-neutral to justify a *365 peremptory challenge, a peremptory strike.
BY MR. SHADDOCK: Judge, I’d like to see it.
BY THE COURT: If that information is available, Mr. Jones?
BY MR. JONES: Yes, sir. It’s a matter of record with the Pascagoula Municipal Court. His conviction date is February the 5th, 2003. You can go get it.
BY MR. SHADDOCK: Well, I mean, I don’t have access to the Pascagoula Police Department.
BY MR. LAWRENCE: We just called, Your Honor. That’s how we got it, over the telephone.
BY MR. SHADDOCK: Well, they won’t give me — you know, if we do have some privacies left in this country, they won’t give it to me. I don’t think. I’ll go try.
BY MR. JONES: And I assure you we’re not making that up, Judge.
BY THE COURT: In regard to — I’ve made my rulings....
(Emphasis added). Both the district attorney and the assistant district attorney participated in this colloquy with the trial court. There were at least five separate declarations by the prosecutors that the information was accurate. Those declarations are: 1) “[W]e found that he has had a marijuana conviction....”; 2) “Through the Pascagoula City Court” in response to the trial court’s question of how the information was verified; 3) “It’s a matter of record with the Pascagoula Municipal Court. His conviction date is February the 5th, 2003. You can go get it.”; 4) “We just called, Your Honor. That’s how we got it, over the telephone.”; and 5) “And I assure you we’re not making that up, Judge.” The prosecution had numerous opportunities to provide accurate information and failed to do so.
¶ 20. Later, Shaddock asked the following: “I would like permission to have about 30 minutes to do a little investigating, if I might, on these Batson challenges.” However, the State objected to this request, saying an investigation could be done after the trial was finished. The trial court denied Shaddock’s request and moved foiward with the trial. After the trial, Shaddock raised the issue in his motion for new trial. In support of his motion, Shaddock offered an affidavit, of the Pascagoula City Court Clerk Rhonda Diehl stating:
That on the morning of May 17, 2004, Investigator Scott Mclrath [sic], of the District Attorney’s Office, Pascagoula, Mississippi, called your Affiant and made inquiry as to any criminal record that the potential juror, Chauncey D. Thompson, may have had with said Police Department; that your Affiant ran the name given to her by the Investigator and advised that the potential juror had been charged with four (4) misdemeanor crimes, they being Simple Possession of Marijuana, No Driver’s License, No Liability Insurance and a Seat Belt Violation; that your Affiant further advised said Investigator that all of these charges had been dismissed by the City for the reason that said potential juror was not the person who committed said four alleged misdemeanor crimes. Attached hereto is a copy of a print-out that was used by said Affiant when she furnished said Investigator with the information.
This affidavit is unrebutted.
¶ 21. As acknowledged by the majority, the “race-neutral reason proffered by the prosecutor must be a false cover for an intentional, racially discriminatory purpose.” Surely, these facts fit that description. In the instant case, we have a prose *366 cutor falsely telling the trial court that he has confirmed that an African-American juror has multiple convictions, when in fact he has confirmed no such thing and there are and never were any convictions. Moreover, during the motion for new trial, the prosecutor had ample opportunity to provide an explanation for the false statements made about juror Thompson, but merely said:
Your Honor, Mr. Mcllrath, the investigator in my office, has been in law enforcement for twenty-something years, looks at every venire list that this office gets, and he goes in there and sees if there’s names he recognizes. He’s been in the business forever. This was one of them. He called up there ... And the affidavit confirms that the information was given to him that this man had been charged with four offenses.
Now, whether those offenses had been dismissed, we didn’t have at that time. He got the first information.... The information the State got from Mr. Mcllrath’s calling the police department was read into the record, so Your Honor will be able to clearly see exactly what the State knew at that time. But it confirms that this man was charged with a crime. Four crimes.
And let’s take it a step further. Mr. Shaddock says — and I don’t know if this is right, because I was just given the affidavit — that he was charged and dismissed, because it wasn’t the right guy....
(Emphasis added).
¶ 22. No explanation whatsoever was given by the prosecutor in response to the city clerk’s affidavit. Any so-called explanation for the misrepresentations offered by the majority are based on speculation and conjecture. Further, the State even contradicted itself in the explanation as to the information provided by the investigator. During voir dire, the prosecutor repeatedly referred to Thompson’s convictions and told the trial court that he had confirmed those convictions and went so far as to refer to Thompson as a “convicted marijuana holder” and to provide the date of conviction. However, during the hearing on the motion for new trial, the prosecutor admitted that he was never told of any convictions, but rather said he was merely told of some charges. Also, this is further rebutted by the affidavit from the city clerk set out above that she told the investigator the charges had been dismissed.
¶ 23. The majority opinion refers to the evidence contained in the record as a “concoction.” Assuming arguendo that it is a “concoction,” then it is a “concoction” that is undiluted by any rebuttal from either the district attorney or the assistant district attorney. There was a full-blown hearing before the trial court where the challenge against Juror Thompson was discussed and the prosecution confirmed that what was conveyed to the trial court at trial was not the information conveyed to either the investigator or conveyed to the prosecutors. Prosecutors told the trial court during voir dire that Thompson had several convictions, but later explained they were merely told he had some charges, charges that were brought against the wrong person and later dismissed. There is not one scintilla of evidence in the record to support any finding that the prosecutors did not know the truth regarding Thompson.
¶ 24. The city clerk’s affidavit is unre-butted, the prosecutors’ misrepresentations are unexplained and the majority decision is unfair. For these reasons, I would find that the trial court erred in failing to grant Booker’s Motion for New Trial. Further, I would reverse Booker’s *367 conviction and sentence and remand this case to the trial court for a new trial.
DIAZ, P.J., JOINS THIS OPINION. WALLER, P.J., AND DICKINSON, J., JOIN THIS OPINION IN PART.

. Without reference to any specific conclusions, the majority opinion asserts that "[t]o accept the conclusions of [this] dissent, one must surmise that District Attorney Lawrence and Assistant District Attorney Jones are not only liars, but that they also acted in an intentional, premeditated, and racially discriminatory manner." However, this opinion never refers to either prosecutor as a liar, nor does it comment on whether their actions were premeditated. The majority further attempts to personalize this matter by specifically and repeatedly identifying the participants. However, the identity of the participants is irrelevant. It is their conduct which compels the result in this case.